IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DANIEL THOMAS LANAHAN, #345-275 *
    Plaintiff
    v.      *     CIVIL ACTION NO. AW-09-3323

MHM SERVICES, INC.,[1] et al., *
    Defendants
                        ********

**MEMORANDUM OPINION**

Pending is Defendants' Motion to Dismiss or for Summary Judgment (ECF No. 14), which is unopposed.[2] Upon review of papers and exhibits filed, the Court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

**Background**

By way of his original and supplemental complaint, Plaintiff alleges that upon his transfer to the Patuxent Institution in April of 2009, he was housed in an unsanitary, vermin infested, cell with water running through it for several months. He states that the "sink kept running constantly [sic] my water was cut off to wash my hands." He claims that he developed a fungus due to black dirt on the floor and dirty mop bucket water. He also claims that he developed bumps on his face. He claims he was denied hygiene materials.

Plaintiff states he had an allergic reaction to anti-psychotic medications but "no one wrote it down or cared." He states that in August, 2009, he was involved in a stand-off with police due to a psychotic episode because he was not prescribed the correct medications. He claims he has told

---

[1] Plaintiff named Mental Health Management Company as a Defendant. Counsel advises that the proper name of the corporate entity is MHM Services Inc. ECF No. 14. The Clerk will be directed to amend the docket accordingly.

[2] Plaintiff was given the requisite notice and an opportunity to oppose the dispositive motion in compliance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and has failed to do so. The Court has received several rambling letters from Plaintiff since the filing of the dispositive motion. ECF Nos. 16-18. None are responsive to the pending motion.

psychiatric staff that he needs Ativan or Kolinapin and other unspecified medication were prescribed to him by Walter P. Carter Mental Hospital, but he has been denied the medication.

Plaintiff further alleges that he was strapped down to a board on two occasions. He claims he suffers from back problems which require him to have a padded bed, but he has been denied same. He states that a roach crawled on him while strapped "down to tourture [sic] board." ECF No. 1.

Plaintiff further alleges that Dr. Boatman, as Chief Psychologist, was in control of Plaintiff's housing. He states that he "suffered cause [sic] he neglected to do his job on my living ]sic] conditions." ECF No. 4.

In response, Defendants assert that MHM Services, Inc., a private company under contract with the State to provide mental health services to state inmates, was responsible for providing mental health care while Plaintiff was incarcerated at the Correctional Mental Health Center in Jessup ("CMHC-J") which includes the Patuxent Institution. ECF No. 14. Defendant Dr. Boatman was employed at CHMC-J and was the Chief Psychologist at CHMC-J from January, 2009 through September or October, 2009. *Id*., Ex. C.

Defendants aver that the Maryland Department of Public Safety and Correctional Services was responsible for the physical maintenance and repairs of inmates' cells as well as responsible for living conditions of inmates housed at Patuxent Institution, including providing for inmates' housing, food, toiletries, clothing, beds, and mattresses. Psychology staff could only request correctional employees provide inmates hygiene kits and monitor inmates' use of those items when

inmates had been deemed a threat to themselves or others. Lastly, psychology staff were not responsible for ordering medication or directing inmates be placed in restraints. *Id*., Ex. C.

Plaintiff's uncontroverted medical records demonstrate that he was transferred from the Eastern Correctional Institution to Patuxent on April 9, 2009, due to a suicide attempt. *Id*., Ex. D, p. 19. Plaintiff was assigned to a cell in L1, the level reserved for inmates with the most severe mental health problems. He was seen at least twice a day by medical personnel while housed on L1. *Id.,* Ex. D.

On May 8, 2009, for the first time, Plaintiff reported his legs and feet were itching. He attributed this problem to a dirty cell. *Id*., Ex. D., p. 169. He was examined and prescribed medication to treat skin irritation. *Id*.

Plaintiff complained on one occasion of roaches in his cell. Plaintiff stated he had been killing roaches in his cell all night. He also reported there was a "big water moccasin" in his cell. Id. Twenty minutes later, Plaintiff did not mention anything about roaches. Examination of Plaintiff at this time described him as being paranoid. *Id*., Ex. D., p. 52. Plaintiff's clinical assessments demonstrated that Plaintiff had problems regarding housing, the legal system, crime, and his social environment. Despite these issues Plaintiff did not voice any complaints about his living conditions. *Id*., Ex. D.

On August 15, 2009, a nurse observed Plaintiff bleeding from his neck. Plaintiff stated he had been scratching a wound on his neck. The wound was cleaned. It did not require stitches. Plaintiff was described as "severely and apparently agitated, psychotic, screaming and yelling 'the gods has called me to save USA.'" *Id*., Ex. D., p. 379. The on-call physician ordered Plaintiff placed in five point restraints, given medication, and placed on the restraint board used by custodial

staff. A deep laceration was observed on Plaintiff neck and left wrist. He was placed on suicide precaution with only a smock. He was later transported to the emergency room by the custodial staff. He returned to Patuxent the following day. It was noted on August 16, 2009, that Plaintiff was awake all day with periods of loud verbal outbursts. He appeared delusional and admitted breaking a porcelain toilet in his cell and using it as a weapon to cut his wrist and neck. He also admitted to barricading himself in the cell and threatening to hurt officers if they came in. Plaintiff had sutures in his wrist and the cut on his neck was open to the air. No bleeding from the wounds was noted. Plaintiff refused psychotropic medication but received Motrin for pain. The water to Plaintiff's cell was turned off due to his threats that he would flood the tier unless he was permitted to speak to the military. Plaintiff stated he had "a secret that would hurt USA, I am the choosen [sic] one." *Id*., p. 375, 377-78.

On August 17, 2009, Plaintiff was evaluated by a psychiatrist. Plaintiff told the psychiatrist that he needed to see someone from the CIA. The psychiatrist determined that the precipitating cause of the preceding events was that Plaintiff had been demoted a behavioral level after arguing with another inmate. Plaintiff was continued on suicide precaution status. His status was changed to "close observation" on August 20, 2009. *Id*., Ex. D., p. 419.

**Standard of Review**

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 127

S.Ct. 1955, 1968-69 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 1969. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses

from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

**Respondeat Superior**

Plaintiff's complaint against Defendants is based solely upon the doctrine of *respondeat superior,* which does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983); *see also Trulock v. Freeh*, 275 F. 3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). The law in the Fourth Circuit is well established that the doctrine of respondeat superior does not apply in § 1983 claims, even where the defendant is a private corporation, rather than a municipality or other public agency. *See Nedd v. Correctional Medical Services*, Civil Action No. JFM-92-1524 (D. Md., October 22, 1992), citing *Powell v. Shopco Laurel Co.,* 678 F.2d 504, 506 (4th Cir. 1982); *McIlwain v. Prince William Hospital*, 774 F.Supp. 986, 990 (E.D.Va. 1991). As such, Plaintiff's claims against MMH Services, Inc. shall be dismissed.

Liability of supervisory officials must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates'' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001), *citing Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the

alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994). Plaintiff has pointed to no action or inaction on the part of Dr. Boatman that resulted in a constitutional injury. To the contrary, Plaintiff states that Boatman negligently failed to do his job. Documents before the court demonstrate that Boatmen was not responsible for Plaintiff's living conditions.[3] Rather, those conditions were controlled by correctional staff who are not a party to these proceedings. Accordingly, his claims against Boatman shall be dismissed.

**Medical Care**

Even if Plaintiff had named the proper parties regarding his claim of denial of adequate psychiatric care, his claim would be subject to dismissal. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003), *citing Wilson v. Seiter*, 501 U.S.294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a Plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There is no essential distinction between the right to medical care for physical ailment and the right to psychiatric or psychological care for mental ailments. *See Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir. 1977). Plaintiff, as an incarcerated person, "is entitled to psychological or psychiatric treatment

---

[3] Plaintiff is free to file a new civil rights complaint naming correctional employees responsible for the conditions of his confinement. As he has failed to state a claim of supervisory liability against the named Defendants based on his conditions of confinement claim, the Court will not further address this aspect of Plaintiff's complaint.

if a physician or other health care provider, exercising ordinary skill and care at the time of observation, concludes with reasonable medical certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial." *Id.*, at 47– 48. The *Bowring* court further concluded that the right to such treatment is based upon the essential test of medical necessity and not upon a belief is that care is merely desirable. *Id.* at 48. "Disagreements between an inmate and a physician over the inmate's proper care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

Plaintiff alleges that had he been provided Ativan or Kolinapin he would not have had the episode on August 15, 2009. He also alleges he was denied unidentified medication prescribed by a private hospital on an unspecified date. The records before the Court demonstrate that Plaintiff has been seen regularly by mental health staff and diagnosed with a variety of mental health problems, including adjustment disorder with anxiety. ECF No. 14, Ex. D. Upon his transfer to Patuxent, Plaintiff's medications were reviewed. Ativan and Kolinapin were not listed medication. Plaintiff has been provided medication to treat his mental health problems as well as therapy sessions with mental health staff. *Id.* Plaintiff has failed to allege that he has been denied constitutionally adequate psychiatric care. Rather, Plaintiff alleges that he has been subjected to malpractice due to the negligence of Defendants. Liability under the due process clause cannot be imposed for mere negligence. *See Patten v. Nichols*, 274 F. 3d 829, 843 (4th Cir. 2001). Plaintiff's bald allegations that Defendants failed to provide certain medications amounts to a disagreement with the judgment of his health care providers. Such disagreement with a course of treatment does not provide the

framework for a federal civil rights complaint. *See Kulak v. City of New York*, 88 F. 3d 63, 74 (2nd Cir. 1996).

## Conclusion

Defendants' Motion to Dismiss or for Summary Judgment shall be granted as to all claims. A separate order follows.

Date:  October 26, 2011                                   /s/
                                                          Alexander Williams, Jr.
                                                          United States District Judge